**AMERICAN PETROLEUM INSTITUTE and National Petroleum Refiners Association, Petitioners,**

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Carol M. Browner, Administrator, United States Environmental Protection Agency, Respondents,**

**Renewable Fuels Association, Intervenor.**

**Nos. 94–1502, 94–1540, 94–1590 and 94–1654.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 9, 1996.

Michael F. McBride and Rita M. Theisen for petitioners, with whom G. William Frick, David T. Deal, John E. Reese, and Maurice H. McBride were on the motion for award of attorneys' fees.

Lois J. Schiffer, Assistant Attorney General, and Timothy Burns, Trial Attorney, Environmental Defense Section, United States Department of Justice, for respondents.

Before WILLIAMS, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

American Petroleum Institute and National Petroleum Refiners Association (hereinafter "petitioners" or "API") move for an award in the amount of $334,755 for attorneys' fees incurred in connection with their successful petition for review of an Environmental Protection Agency ("EPA") regulation. *See American Petroleum Inst. v. EPA,* 52 F.3d 1113 (D.C.Cir.1995). After considering petitioners' motion, we find that they are entitled to an award of reasonable attorneys' fees but that they have not carried their burden with respect to the full amount for which they seek reimbursement. For reasons that we will discuss in detail below, we conclude that petitioners are entitled to attorneys' fees in the amount of $237,997.03.

## I. BACKGROUND

In the underlying litigation, petitioners challenged EPA's regulations implementing the Reformulated Gasoline ("RFG") program established by Congress in § 211(k), (42 U.S.C. § 7545(k)), of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.* (1988 & Supp. V 1993). That program mandated the promulgation of regulations to achieve clean air goals through reformulation of conventional gasolines and specified minimum percentages of oxygen for such fuels, thus requiring the use of oxygenates. 42 U.S.C. § 7545(k)(1), (2). The EPA regulations at issue required, *inter alia,* that 30 percent of the oxygen required to be used in RFG comes from renewable oxygenates, as opposed to non-renewable oxygenates such as those produced by petitioners. Regulation of Fuels and Fuel Additives: Renewable Oxygenate Requirement in Reformulated Gasoline, 59 Fed.Reg. 39,258 (1994).

Petitioners sought review in the proceeding which underlies the present fee petition. The facts and decision are set forth in our prior opinion, *American Petroleum Institute v. EPA,* 52 F.3d at 1115–21. Petitioners argued the invalidity of the regulations on five bases. In the end, we needed to reach only one of them: under the plain meaning of section 7545(k), EPA had no power to adopt the rules in question as they were not directed toward the reduction of volatile organic compounds and toxic emissions and EPA improperly interpreted the statute as giving it broader power to adopt the Renewable Oxygenate Rule ("ROR"), which would not provide for additional reductions in those emissions. *Id.* at 1119.

## II. DISCUSSION

### A. Petitioners' Eligibility for a Fee Award

Petitioners now move for attorneys' fees under 42 U.S.C. § 7607(f), which provides that for judicial proceedings on petitions for review of EPA's regulations under the CAA "the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate." There are two primary tests for determining when an award of attorneys' fees is "appropriate" under section 7607(f): 1) whether the party prevailed on the merits; and 2) whether the party's litigation furthered the purposes of the statute and the proper implementation and interpretation of the Act. *See Sierra Club v. EPA,* 769 F.2d 796, 799–800 (D.C.Cir.1985). It is clear and the government concedes that petitioners meet this test and are entitled to an award of reasonable attorneys' fees under § 7607(f).

The government, however, challenges the reasonableness of portions of the award prayed. Though some of the government's arguments are without merit, some correctly suggest grounds on which we should disallow portions of the fees sought.

### B. The "Distinctly Different Claims"

The government argues that we should disallow a portion of the fees prayed because petitioners argued five grounds for the invalidity of the regulations and the court based its decision on only one of them. In the government's view, this means that we should eliminate fees attributable to the other arguments under the theory that where a party raises "distinctly different claims for relief that are based on different facts and legal theories," in seeking fees the party must establish an entitlement to fees for each subset of claims separately. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983). That is of course an accurate statement of law. It simply has no applicability to the present case.

Petitioners did not raise any claims distinct and separate from the one on which they prevailed. They pursued only one claim for relief—the invalidity of the regulation at issue. They argued five defensible bases for that invalidity. Even the government concedes that the merits panel accepted the soundness of not only the principal argument upon which we based our holding, but also, in dicta, of the second and third arguments raised by petitioners. *See* 52 F.3d at 1119–21. The government does argue that the "fourth and fifth claims" were fundamentally different from the others. But there were no fourth and fifth claims. There were only

fourth and fifth arguments for the one claim. Specifically, those arguments were that EPA acted arbitrarily and capriciously in promulgating the rule, an obviously defensible argument in a case in which EPA was acting beyond its statutory authority. It is not necessary that a fee-petitioning client and its attorney have acted with the 20/20 acuity of hindsight in developing their arguments in order to collect attorneys' fees. As there are no "separate claims" but only separate arguments in support of the same claim, *Hensley v. Eckerhart* has no applicability. *See Sierra Club,* 769 F.2d at 801–04; *Kennecott Corp. v. EPA,* 804 F.2d 763, 765–66 (D.C.Cir.1986) (per curiam). We do not suggest the implausibility of an argument in some case that some issue might be so frivolous that all time spent on it was unreasonable, but that is not the government's argument in this case. The argument the government does make is inapposite.

## C. Reasonableness

■■■■ We state at the outset that in evaluating the reasonableness of all the elements of billing, items of expense or fees that may not be "unreasonable between a first class law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States." *In re North (Shultz Fee Application),* 8 F.3d 847, 852 (D.C.Cir.1993) (per curiam). While we do "not 'pass judgment on the propriety' of professional decisions of counsel or the wisdom of their client's decision in its contract, ... we are duty bound to recall that Congress required us to exercise our independent judgment on the reasonableness of fees requested before taxing them against the United States." *In re Donovan,* 877 F.2d 982, 996 (D.C.Cir.1989) (per curiam). We also note that petitioners bear the burden of demonstrating the reasonableness of each element of their fee request. *In re North (Bush Fee Application),* 59 F.3d 184, 189 (D.C.Cir.1995) (per curiam). We conduct our review of petitioners' fee request with those principles in mind.

### 1. Questions of Reasonableness of Specific Items

■■■ Petitioners' request employs the familiar formula of professional hours expended multiplied by the hourly rate of the billing professional, which is often called the lodestar. *See, e.g., National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1323 (D.C.Cir.1982) (per curiam). They state that their attorneys' hourly rates ($300 for partner Michael McBride, $250 for partner Rita Theisen, $200 for associates, $30–$80 for paralegals, and $100 for a law clerk) are based on reasonable hourly rates that are consistent with the market rate "prevailing in the community for similar work." *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980). Petitioners have provided support for the reasonableness of their rates through affidavits and a survey of rates and we hold that these rates are reasonable.

In the second step of lodestar analysis, we must determine whether petitioners have carried their burden of demonstrating that each time block billed at the reasonable rates was itself a reasonable expenditure of time. We first note that the petition reflects an apparent arithmetic error of $1,000. The fee request seeks fees of $287,370 for representation from June, 1994, to February, 1995. Monthly billing statements for that time period document only $286,370. We therefore first deduct $1,000 to correct the apparent error in calculation.

■■■ Next, we will make adjustments in the petition for several items as to which petitioners have not carried their burden of establishing sufficient reasonableness to warrant taxing fees against the United States. *See Bush Fee Application,* 59 F.3d at 189. First, as the government points out, there are numerous instances in which billing professionals describe their work as preparing and "filing" certain documents. Petitioners explain that most of these instances refer to the attorney having the documents actually filed by someone else, and we accept this explanation. There are a few billing entries, however, where it is clear that the attorney himself delivered the documents. For example, H.S. Berger, who bills at $200 per hour, logged 8 hours on July 21, 1994, for "finaliz-

ing motions for submission to D.C. Court of Appeals; going to courthouse to file," 3.5 hours on July 25, 1994, for "delivering petition to supplement our motion for a stay," and 2 hours on August 5, 1994, for "delivering petition for review and reply to RFA's motion." Also, McBride logged 1.5 hours on November 18, 1994, to "make D.C. Circuit filing, discuss collateral litigations with client." Likewise, there are several billing entries for paralegals delivering documents. While petitioners state that they requested this level of service to ensure that certain sealed documents were handled properly, they have not established that it is reasonable to charge the public fisc for the service of professionals in these instances. *See Bush Fee Application*, 59 F.3d at 194 (deducting professional time billed for delivery of documents as task that could have been performed by a non-billing non-professional); *In re Meese*, 907 F.2d 1192, 1202–03 (D.C.Cir. 1990) (per curiam) (deducting charges by paralegals for delivering documents). Accordingly, we will deduct 7.5 hours of Berger's time and 1 hour of McBride's time and also subtract the $130 billed for paralegals delivering documents.

■ Second, McBride bills for attending a press conference on July 13, 1994. Costs associated with media relations, however, are not "costs of litigation" under 42 U.S.C. § 7607(f), and we therefore cannot authorize their reimbursement. *Cf. Meese*, 907 F.2d at 1203 (deducting fees for media-related activity as not reasonably related to defense of an independent counsel investigation). Petitioners state that McBride spent one hour attending the press conference, and we will deduct the fee for this hour.

■ Third, the government argues that petitioners should not be reimbursed for their attorney's attendance at a congressional hearing that took place on June 24, 1994, which was before the ROR even issued. The government notes that McBride billed five hours for attending the hearing, and it argues that it was unnecessary for the lead partner in the case to spend this much time as a spectator at the hearing, especially since petitioners merely cited the transcript of that hearing in a footnote in their briefs. Like-

wise, the government objects to petitioners' claims for fees billed by McBride for attending the oral argument and discussing extensively a separate, unrelated case filed with this court, *Ethyl Corp. v. EPA*, 51 F.3d 1053 (D.C.Cir.1995). Petitioners respond that attendance at the congressional hearing and at the oral argument for *Ethyl Corp. v. EPA* was directly related to their success on the merits and that the fees should be covered in the fee award. *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 762 F.2d 272, 277 (3d Cir.1985) (upholding fee award for activities that "materially aided" and "contributed" to success on merits), *aff'd in part & rev'd in part on other grounds*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *and rev'd on other grounds*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

As noted above, section 7607(f) permits reimbursement of the "costs of litigation ... including reasonable attorney ... fees" and we would therefore have to find McBride's fees for attendance at the hearing and the oral argument to be costs of litigation and reasonable attorney fees in order to award fees under the section. McBride's attendance at the hearing and the oral argument is akin to the "defensive monitoring" of other prosecutions that we have declined to reimburse in various criminal cases seeking attorneys' fees under 28 U.S.C. § 593(f). *See, e.g., In re North (Gardner Fee Application)*, 30 F.3d 143, 147 (D.C.Cir.1994) (per curiam). While we do not doubt that McBride's attendance at these events may have been a reasonable expense from petitioners' point of view, like defensive monitoring, these fees are not sufficiently connected to the litigation at issue to require the taxpayers to reimburse them. *Id.* We will therefore deduct the fees claimed for McBride's attendance at the hearing (5 hours) and oral argument (2 hours) but will allow the fees for discussion of *Ethyl Corp. v. EPA* since the time spent by an attorney in analyzing a relevant precedent is a traditional cost of litigation.

■ Fourth, the government raises an objection to petitioners' claim for fees for the preparation and filing of a petition for review on behalf of the Oxygenated Fuels Associa-

tion, another party whose petition for review was consolidated with the one filed by petitioners. Petitioners state that they asked their counsel to assist the Oxygenated Fuels Association in part because an order consolidating several petitions for review cautioned the parties in the consolidated cases to avoid repeating the arguments made by petitioners, and petitioners interpreted this as extending to coordinating with the Oxygenated Fuels Association. The billing statement for petitioners' counsel, however, reveals that they actually prepared the petition for review filed by the Oxygenated Fuels Association, not that they merely consulted about the duplication of arguments. Because these are fees that are properly attributed to the Oxygenated Fuels Association rather than to petitioners, we will deduct the 1.5 hours billed by McBride and 5.5 hours billed by Theisen in this matter.

In sum, the deductions applicable for specific items are:

| Amount requested | | $287,370 |
| --- | --- | --- |
| Arithmetic error | $1,000 | |
| Document deliveries | $1,930 | |
| Press conference | $300 | |
| Hearing and argument fees | $2,100 | |
| Oxy. Fuels Ass'n petition | $1,825 | |
| Total specific reductions | $7,155 | |
| Subtotal of fee request | | $280,215 |

### 2. General Questions of Reasonableness

■ The government maintains that petitioners should not recover any fees for the motion for summary reversal because it was clearly inappropriate to request summary disposition in a complicated case of first impression. *See* D.C.Circuit Handbook of Practice and Internal Procedures 75 (1994) ("Parties should avoid requesting summary disposition of issues of first impression for the Court."). Petitioners respond that the question raised in the motion for summary reversal was not of first impression since the issue of EPA's authority under section 7545(c) of the CAA was previously litigated in *Amoco Oil Co. v. EPA*, 501 F.2d 722 (D.C.Cir.1974), and that even if it was of first

impression, the issue was so clear as to warrant summary action as evidenced by our straightforward decision on the merits. They also state that the hours dedicated to the motion produced valuable work that formed the basis of the arguments in their successful stay motion and their briefs.

Despite petitioners' assertion, however, it is clear that the issue of the legality of the ROR, which petitioners challenged immediately upon its promulgation, was one of first impression and was not appropriate for summary disposition, as it required an extensive review of the RFG program, the ROR, and the requirements of the CAA. In fact, petitioners themselves in their reply to the government's partial opposition to their motion for attorneys' fees state that "this was a complex case." As noted in the Handbook of Practice and Internal Procedures at 75, "[m]otions for summary reversal are rarely granted, and only where the merits are 'so clear, plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect [the Court's] decision.'" (quoting *Sills v. Bureau of Prisons*, 761 F.2d 792, 793–94 (D.C.Cir.1985)). Attorneys with the skill and experience of petitioners' counsel in this case should have known that there was zero chance of this court allowing a motion for summary reversal in a matter of this novelty and complexity. Petitioners have not cited nor have we found any case remotely approaching the magnitude of this one in which we have granted a motion for summary reversal. Accordingly, we will deduct the fees incurred in connection with the motion. Because the motion for summary reversal was part of the successful motion for a stay, however, and petitioners' attorneys did not disclose how they allocated their time among the motions and their issues, we must estimate the hours spent on the summary reversal arguments. While the government suggests a twenty-five percent reduction in the fees for all the motions to account for the summary reversal motion, this appears too large a reduction and we instead estimate that fifteen percent of the time spent on motions was spent on the summary reversal arguments and will deduct accordingly.

The government also takes issue with the number of hours billed by petitioners' attorneys for certain tasks. Petitioners reply that the hours spent were reasonable and that once they have provided documentation of their fee request, the burden falls on the government to go forward with evidence that the fees are erroneous. *See, e.g., National Ass'n of Concerned Veterans,* 675 F.2d at 1326 ("Once the fee applicant has provided support for the requested rate, the burden falls on the Government to go forward with evidence that the rate is erroneous.") Petitioners misconstrue the government's burden, however, since the quoted phrase from *National Association of Concerned Veterans* deals only with the reasonableness of hourly rates, something not at issue in this case, and not the reasonableness of the number of hours spent on various tasks. To satisfy the burden of showing that the hours claimed were reasonably expended on a case, a petitioner must submit "sufficiently detailed information about the hours logged and the work done," and "it is insufficient to provide the ... Court with very broad summaries of work done and hours logged." *Id.* at 1327; *see also Kennecott Corp. v. EPA,* 804 F.2d at 767 (noting that fee applicants bear the heavy burden of presenting well documented claims). The bills submitted by petitioners to document the work done by their attorneys, however, contain mostly broad summaries of the work done and the hours logged on a daily, rather than a per task, basis. Thus, it is not clear that petitioners have met their burden of demonstrating the reasonableness of the hours expended. *See Kennecott Corp.,* 804 F.2d at 767. Petitioners argue that they had no incentive to spend excessive sums on attorneys' fees since they paid the fees without serious consideration of recovering them from the government. While this is very likely, the court has a duty to independently assess the reasonableness of fees sought from the government and "we are not prepared to hold that the willingness of a private client to pay a bill necessarily demonstrates that the charge was reasonable under the statutory definition and can therefore be automatically assessed against the government." *Id.* Thus, we now undertake an evaluation of the reasonableness of the hours spent on various tasks.

The government first questions the reasonableness of spending approximately 550 hours (once the specific task deductions are made) on the preparation of the stay petition filed with EPA and the motions for a stay and for summary reversal or expedited consideration filed with the court. The motions filed with the court were each twenty pages long, plus attachments, and the motion filed with EPA was somewhat shorter. The government argues that it was unreasonable to devote approximately fourteen weeks worth of attorney time to these motions and that it was also unreasonable for most of this time to have been billed by partners rather than associates. *See Delaware Valley Citizens' Council,* 762 F.2d at 278–79. Five weeks of work, or 200 hours, would be a reasonable amount of time to devote to these motions, asserts the government, and it states that the time should be allocated sixty percent to associate time and forty percent to partner time. Petitioners counter that this was a complex case that required close scrutiny of two complicated rule makings and their voluminous records, that the motions were hotly contested, and that petitioners carried a heavy burden in challenging agency actions. *See Sierra Club,* 769 F.2d at 807 ("[P]etitioners in a case involving direct review of administrative regulations obviously face the burden of deciding which provisions to challenge and on what grounds, while the respondents need only react to those challenges."). As for the lead partner doing a large majority of the work, petitioners state that their attorneys were following their wishes because they hired McBride based on his experience and wanted his personal attention to the case.

The Supreme Court in *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40, has directed us to determine whether the claimed fees were reasonably expended and states that fee-request hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. Upon review of the attorneys' billing statement, which contains primarily broad descriptions such as "work on motions," we conclude that petitioners have failed to dem-

onstrate the reasonableness of expending 550 hours of attorney time, which translates to almost fourteen person weeks of full-time effort, on the preparation of their motions. *See Environmental Defense Fund, Inc. v. Reilly,* 1 F.3d 1254, 1258–60 (D.C.Cir.1993) (reducing fee award to account for attorney spending an excessive amount of time on certain tasks). While the motions involved some scientific information and a large agency record, in essence, petitioners presented a focused challenge to EPA's authority to promulgate the ROR under section 7545(k) of the CAA. Deciding what is a reasonable amount of time to spend on motions is an imprecise undertaking, however, and our calculations will necessarily be rough. Based on the motions filed and our familiarity with the issues of the case, we conclude that petitioners have carried their burden of persuasion only as to seventy-five percent of the hours spent on motions, and we will reduce the billing for each timekeeper by one-fourth for the time spent on the motions. We will make this reduction before we make the fifteen percent reduction for the inappropriate summary reversal motion.

 As for the distribution of these hours between partner and associate time, the government contends that petitioners fail to show the reasonableness of the lead partner billing most of this time, as they provide no explanation other than their preference for having McBride's personal attention to their case. Clearly this is not an unreasonable practice between a first class law firm and a solvent client. But we must always require indicia of reasonableness sufficient for us to justify taxing this against the United States. *Bush Fee Application,* 59 F.3d at 189. In *Missouri v. Jenkins,* 491 U.S. 274, 288–89, n. 10, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989), the Court stated that it is appropriate to distinguish between work that may be done by lawyers and that which may be done by paralegals, and it admonished that the value of the work which may be done by a non-lawyer is not enhanced simply because a lawyer does it. By analogy, there is work that may be ably done by an associate, such as research, compiling documents, and drafting motions, the value of

which is not enhanced merely because it is done by a senior partner.

But, as petitioners remind us, in *Price v. Marshall Erdman & Assoc., Inc.,* 966 F.2d 320, 327 (7th Cir.1992), a sister circuit held that it is "cutting things too fine" to disallow a partner's fees for work that could have been done by an associate. It is true that in that case the court explained that the law firm involved was quite small, just two partners and two associates, and that under such circumstances it was not feasible to maintain a rigid line between partner work and associate work, and petitioners' attorneys are not part of a small law firm. This does not mean, however, that the division of work as between partners and associates is any less fine a cut. This is a complex and difficult case. The government itself has said as much in arguing, successfully we might add, against fees for the time spent on summary reversal motions. Presumably, the clients came to the law firm they employed, not because of the skill of the associates but that of the partners in dealing with such complex and difficult litigation. We therefore will make no adjustment for the allocation of time between partners and associates. We note that this will likely not result in as great an increase in the award as might at first be supposed. Presumably the skill and experience of the partners places them further along the learning curve and enhances their ability to operate efficiently so that the higher partner rate is likely to be offset, at least in part, by a reduction in the number of hours multiplying that rate. Also, in most instances when associates are employed to work under the supervision of a partner, there is some duplication of time in that the associate must report and the partner must review, creating new billable hours not present when the partner does the work directly.

Thus, the fees awarded for the summary reversal or expedition and stay motions will be as follows:

| | |
|---|---|
| **Fees requested for motions** | **$139,387.50** |
| Deduction for reasonableness $34,846.88 | |
| Subtotal for motions | $104,540.62 |
| Deduction summary reversal $15,681.09 | |
| **Fees awarded for motions** | **$88,859.53** |

With the deductions we have made, the current subtotal of the fees requested for the pre-decision litigation is $229,687.03.

The government next challenges the fees expended on writing the opening brief, asserting that the 79 hours claimed by petitioners' attorneys, all of it by partners, is excessive, especially in light of the time already spent on motions that included the same arguments. Upon review, it appears to us that petitioners have carried their burden of establishing the reasonableness of these hours and we will make no reduction for the time spent on the opening brief.

The government makes a stronger complaint about the partner time spent on the reply brief, for which petitioners seek reimbursement for approximately 120 hours billed by McBride. The reply brief counters the arguments in EPA's brief by reiterating petitioners' initial arguments and highlighting the flaws in EPA's position, and it contains cites to some additional cases. Petitioners fail, however, to carry their burden as to why it was necessary to spend substantially more time on the reply brief than on the opening brief. Based on our review of the reply brief, we conclude that it would have been reasonable for an experienced partner to have spent 60 hours preparing the reply brief and therefore deduct $18,000 for the additional 60 hours of partner time.

The next point of contention is the 126.25 hours spent in preparation for oral argument, of which 116.25 hours were billed by McBride, 2.25 hours were billed by Theisen, and 7.75 hours were billed by a paralegal. The government notes that petitioners had fifteen minutes of argument time and asserts that the amount spent in preparation was excessive, especially since the court observed in another case that it appeared excessive to spend 93 hours preparing for oral argument given the substantial amount of time already spent researching and writing the briefs. *Kennecott Corp.*, 804 F.2d at 768 n. 5. Petitioners make no specific answer to this but merely assert that the hours spent on all activities were reasonable in light of the complexity of the case and that they provided sufficient documentation of these hours. As we noted several times above, the general-

ized work descriptions (116.25 hours described as "prepare for oral argument") do not satisfy petitioners' burden. *See id.* at 767 (observing that question of the reasonableness of the time spent on certain tasks is made more difficult to resolve as a result of the imprecision of the documentation). We estimate that, given McBride's obvious familiarity with the case from his work on motions and briefs, it would have been reasonable for him to have spent two weeks (80 hours) preparing for oral argument. We will therefore deduct the fee for those hours exceeding 80 billed by McBride, which is $10,875 (36.25 hours at $300 per hour). The small number of hours spent by the other partner and the paralegal seem reasonable and will be reimbursed in full.

The deductions for the preparation of the briefs and oral argument are as follows:

| | | |
|---|---|---|
| **Subtotal pre-decision fees** | | $229,687.03 |
| Deduction reply brief | $18,000 | |
| Deduction oral argument | $10,875 | |
| Total deductions | $28,875 | |
| **Total pre-decision fees** | | $200,812.03 |

Accordingly, we will award petitioners $200,812.03 for attorneys' fees incurred before our decision issued in this case.

## D. Post-decision Fees

Petitioners also filed a supplemental motion seeking attorneys' fees totaling $47,385 for work done after this court issued its decision in *API*. Most of this work involved analysis of EPA's motion for rehearing and preparation of the motion for attorneys' fees.

First, the government objects to petitioners' request for 27.25 hours of associate time and 6.25 hours of partner time for evaluating the rehearing petition filed by EPA. The government argues that this amount of time is excessive since the court decided EPA's petition without allowing petitioners to file a response to it and that only a small amount of time to review EPA's petition could possibly be justified. Petitioners maintain that they could not ignore the rehearing petition because it, along with the involve-

ment of the Solicitor General, strongly suggested that the government might seek a writ of certiorari. They state that they reasonably requested that their attorneys assess the strength of the petition, especially given the real-life implications of the ROR for their industry and the fact that EPA had issued a notice implying that it might retroactively enforce the ROR if it eventually prevailed on the merits. We agree with petitioners that it was reasonable for them to analyze and be prepared to respond to EPA's petition for rehearing and we find reasonable the amount of time spent in this connection.

We finally reach the last area of contention, the number of hours expended in preparation of the motion for attorneys' fees. While fees for the preparation of fee motions are not reimbursable under all fee-shifting statutes, *see, e.g., In re North (Gadd Fee Application)*, 12 F.3d 252, 257 (D.C.Cir.1994) (per curiam) (holding that "fees for fees" are not reimbursable under 28 U.S.C. § 593(f)(1)), fees for fees are permitted under section 7607(f) of the CAA. *See, e.g., Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 4 (D.C.Cir.1982) (per curiam) (awarding fees for the time spent preparing request for fees under the CAA). Petitioners seek reimbursement for 90.75 hours of associate time and 43.5 hours spent by the lead partner, which add up to $31,200 in fees. There was also some time spent by a paralegal in compiling the billing statements, to which the government does not object. The government asserts that this is an unreasonable amount of attorney time and that it should only have taken about 32 hours to prepare the fee motion. *See Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d at 1259 (holding that boilerplate fee motion should have taken attorney only 8 hours to prepare); *Kennecott Corp.*, 804 F.2d at 768 n. 5 (suggesting that 50 hours of attorney time spent preparing the bill was excessive). Petitioners respond that these cases are distinguishable because in *Environmental Defense Fund, Inc. v. Reilly*, the case was settled before the fee petitioner filed any briefs, and, in *Kennecott*, the fee petitioners sought 50 hours for preparation of the bill, not for the entire fee mo-

tion. Petitioners maintain that the hours claimed are reasonable because the fee motion involved substantial research on novel issues and because petitioners had never previously requested attorneys' fees.

First, petitioners' "novel" argument, whether a non-profit organization with for-profit entities as members can recover attorneys' fees under the CAA, was a small part of the petition, appearing only in a footnote in their initial motion. Second, we note that it is petitioners' attorneys' familiarity with the law and procedure for fee petitions, and not petitioners' familiarity, that is relevant to the number of hours spent by their attorneys preparing the fee request. Upon review of the fee motion, we conclude that petitioners have not carried the burden of demonstrating that over two weeks of associate time and one week of lead partner time was reasonably expended in preparing the fee motion. This is especially true in light of the laconic work descriptions that have been a pervasive problem throughout petitioners' fee motion. We conclude that it would have been reasonable to devote 60 hours of associate time and 30 hours of partner time to the fee motion and thus will deduct $10,200 (30.75 associate hours at $200 per hour and 13.5 lead partner hours at $300) from the amount claimed.

After deducting $10,200 from the $47,385 in fees incurred after we issued our decision in *API*, we will award $37,185 in post-decision fees.

## III. CONCLUSION

For the reasons set forth above, it is ordered that petitioners be awarded $237,-997.11 in reasonable attorneys' fees they incurred in connection with this court's decision in *API* and this fee application.

*Judgment accordingly.*