1 F.3d 1254
 303 U.S.App.D.C. 87, 23 Envtl. L. Rep. 21,144
 ENVIRONMENTAL DEFENSE FUND, INC., Petitioner,
v.
William K. REILLY, Administrator, U.S. Environmental
Protection Agency, and U.S. Environmental
Protection Agency, Respondents,
American Petroleum Institute, Chemical Manufacturers
Association, and Edison Electric Institute, et
al., Intervenors.
 No. 90-1387.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 14, 1993.
Decided July 13, 1993.
As Amended Aug. 30, 1993.
Supplemental Opinion Sept. 10, 1993.
 
 [303 U.S.App.D.C. 88] Petition for Review of an Order of the Environmental Protection Agency.
 Howard I. Fox, with whom Robert G. Dreher, and Karen L. Florini were on the brief for petitioner.
 Elizabeth M. Ahern, Atty., Dept. of Justice, with whom Mary Elizabeth Ward, Atty., Dept. of Justice, and Thomas H. Beisswenger, Atty., E.P.A., were on the brief for respondents.
 Gottlieb J. Frick and Ralph J. Colleli, Jr. entered appearances for intervenor American Petroleum Institute.
 Hunter L. Prillaman and David F. Zoll entered appearances for intervenor Chemical Mfr's. Ass'n.
 Douglas H. Green and Toni K. Allen entered appearances for intervenor Edison Elec. Institute, et al.
 Before WALD, RUTH BADER GINSBURG, and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 The Environmental Defense Fund petitions for an award of attorneys' fees in the amount of $32,542.75. In the underlying litigation we vacated an Environmental Protection Agency rule for want of public notice and comment before promulgation. We now hold that the EDF was a "prevailing party" within the meaning of the Resource Conservation and Recovery Act and therefore is entitled to recover its attorneys' fees. Because one of the EDF's attorneys submitted intolerably excessive time entries, however, we deny all of the $17,773.50 in fees requested for her work. After making a further adjustment of $700, we award the EDF a fee of $14,069.25.
 
 I. BACKGROUND
 
 2
 In 1980 the EPA promulgated a regulation governing hazardous waste management pursuant to the RCRA. The regulation provided in pertinent part:
 
 
 3
 (a) The Administrator shall list a solid waste as a hazardous waste only upon determining that the solid waste meets one of the following criteria: ...
 
 
 4
 (3) It contains any of the toxic constituents listed in Appendix VIII unless, after considering any of the following factors, the Administrator concludes that the waste is not capable of posing a substantial present or potential hazard to human health or the environment when improperly treated,stored, transported or disposed of, or otherwise managed....
 
 
 5
 40 C.F.R. Sec. 261.11(a)(3) (emphases added).
 
 
 6
 Intervenor American Petroleum Institute challenged this regulation. See Shell Oil Company v. EPA, 950 F.2d 741 (D.C.Cir.1991). In January 1990 the EPA entered into a settlement agreement whereby it amended Sec. 261.11(a)(3) to read as follows:
 
 
 7
 (a) The Administrator shall list a solid waste as a hazardous waste only upon determining that the solid waste meets one of the following criteria: ...
 
 
 8
 (3) It contains any of the toxic constituents listed in Appendix VIII and, after considering the following factors, the Administrator concludes that the waste is capable of posing a substantial present or potential hazard to human health or the environment when improperly [303 U.S.App.D.C. 89] stored, transported or disposed of, or otherwise managed....
 
 
 9
 55 Fed.Reg. 18,276 (May 4, 1990) (emphases added). Deeming the amendment a technical correction that was "not intended to and [would] not affect existing Agency listing practices based upon the Agency's consistent interpretation of the 1980 regulatory language," the EPA decided not to give public notice of and solicit comment on the change. See id.
 
 
 10
 In July 1990 the EDF petitioned this court to set aside the EPA's amended rule on the ground that the amendment implemented a policy change and thus required notice and an opportunity for comment. The EDF argued that under the original regulation the EPA could list a waste upon determining only that the waste contained a toxic constituent; under the amended regulation, by contrast, before it could list a waste the EPA had to determine also that the waste was capable of posing a substantial present or potential hazard to human health or the environment.
 
 
 11
 Before the EDF was scheduled to file its brief on the merits, the parties settled their dispute and filed a joint motion for remand and dismissal. This court accordingly ordered that the 1990 amendment be vacated, that Sec. 261.11(a)(3) read as it did prior to the amendment, and that the case be remanded to the EPA.
 
 
 12
 As provided in the settlement agreement, the EPA then published a notice soliciting comment on its proposal to adopt anew its 1990 revision of Sec. 261.11(a)(3). See 56 Fed.Reg. 33,238 (July 19, 1991). The EPA again stated that "the proposed language is not intended to and will not affect existing Agency listing practices based upon the Agency's consistent interpretation of the 1980 regulatory language." After receiving comments, the Administrator adopted the proposed revision. The current version of Sec. 261.11(a)(3) is therefore identical to the regulation as first purportedly amended without public comment in 1990.
 
 
 13
 The EDF now seeks an award of attorneys' fees in the amount of $32,542.75 pursuant to 42 U.S.C. Sec. 6972(e). Of that total $7,972.50 is claimed for attorney time spent on the merits of the case, while $24,570.25 is claimed for attorney time spent attempting to recover the attorneys' fees.
 
 II. ANALYSIS
 
 14
 The RCRA provides for the award of attorney's fees as follows:
 
 
 15
 The court, in issuing any final order in any action brought pursuant to this section or section 6976 of this title, may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.
 
 
 16
 42 U.S.C. Sec. 6972(e). In Farrar v. Hobby, --- U.S. ----, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at ----, 113 S.Ct. at 573; see also Hewitt v. Helms, 482 U.S. 755, 762, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (prevailing party must secure some benefit greater than just "favorable statement of the law in an otherwise unfavorable opinion"); Waterman S.S. Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1122 (D.C.Cir.1990) (prevailing party must achieve "something more than an enhanced legal position in a proceeding that ultimately fails to supply any material relief"). The Court added that a plaintiff would not be entitled to recover its attorney's fee if it secured only a "technical" or an insignificant victory. Farrar, --- U.S. at ----, 113 S.Ct. at 574; accord Texas State Teachers Assn. v. Garland Independent School Dist., 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).
 
 
 17
 When the plaintiff is the prevailing party, the court (on motion) calculates a "reasonable" attorney's fee based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Although the Supreme Court has said that "[a] request for attorney's fees should not result [303 U.S.App.D.C. 90] in a second major litigation," Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, when there is a dispute the "hours reasonably devoted to litigating attorney's fees are [also] compensable." Grano v. Barry, 783 F.2d 1104, 1113-14 (D.C.Cir.1986). In such a case, as the court is "expert[ ] in assessing the reasonableness of an attorney's fee award," we "scrutinize an attorney's fees with particular care," EDF v. EPA, 672 F.2d 42, 54 (D.C.Cir.1982) (citation omitted).
 
 A. Prevailing Party
 
 18
 Generally a plaintiff that has obtained a remand for further proceedings is not at that point a "prevailing party" for the purpose of collecting its attorney's fee. Only if it ultimately succeeds on the merits of its underlying claim may it be awarded the attorney's fee it incurred in obtaining the remand. See Sullivan v. Hudson, 490 U.S. 877, 886, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989); Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); Waterman, 901 F.2d at 1122; National Coalition Against Misuse of Pesticides v. Thomas, 828 F.2d 42, 44 (D.C.Cir.1987). The rationale for this rule is that "the award of [attorneys'] fees for corrective efforts that yield no real world benefit would reduce the normal deterrent to litigative nitpicking." Waterman, 901 F.2d at 1122.
 
 
 19
 The EPA belittles the EDF's victory as "purely procedural." But it succeeded in changing the regulation then in force, albeit subject to the agency's right later, if it chose to pursue the matter (as it did), to undo the change pursuant to notice-and-comment rulemaking. The present case is therefore like Action on Smoking and Health v. Civil Aeronautics Board, 713 F.2d 795 (D.C.Cir.1983). In that case ASH successfully challenged the CAB's purported revocation of a regulation without notice and comment; the court vacated the revocation order and directed the CAB to republish and retain the regulation in force "until such time as those provisions may be amended or revoked by proper rulemaking made after notice and comment proceedings." Id. at 797. Although we later denied as untimely the petitioner's request for its attorney's fee, we had no doubt that "[i]n the normal course ASH would be entitled to fees for this work." ASH v. CAB, 724 F.2d 211, 225 (D.C.Cir.1984). Similarly here, after vacating the amendment, the court ordered the EPA to restore the original regulation and precluded the agency from reinstating the amendment without prior notice and comment. See also EDF v. EPA, 716 F.2d 915, 919 (D.C.Cir.1983) (awarding fee where petition to review EPA decision to delay RCRA reporting requirements prompted agency to rescind decision and thereby moot petition: "but for this litigation, the original reporting requirements would not have been reinstated").
 
 
 20
 The EPA would have us distinguish ASH v. CAB on the ground that the petitioner in this case received no "real world benefit" from our vacatur of the 1990 amendment. The EPA points out that a mere eight months later it promulgated the very amendment to which the EDF had objected. That is entirely beside the point of EDF's objection, however, which was to the lack of public notice and comment in the agency's first attempt to alter the regulation. In the real world of the APA, an opportunity for comment--which the EDF did get--is not to be denigrated. While it does not assure that the petitioner will be able to persuade the agency to change its proposal, of course, it does give the petitioner a chance. And if that chance were not in itself something of value in the real world, then there would be no need for the notice and comment procedures of the APA.
 
 
 21
 Grano v. Barry, 783 F.2d 1104 (D.C.Cir.1986), is instructive in this regard. There we held that plaintiffs who had obtained an injunction against demolition of an historic building pending a referendum were entitled to recover their attorney's fee even though that referendum was later declared invalid and the building was ultimately demolished. We found that "these plaintiffs clearly obtained a significant benefit when they succeeded in ensuring that the voting would take place while the [building] still stood and the initiative still had the potential to mean something." Id. at 1109 (emphasis in original). By the same token, in this case the comment period gave the EDF and other [303 U.S.App.D.C. 91] members of the public an opportunity to participate before and potentially to persuade the agency not to adopt the proposed amendment.
 
 
 22
 The EPA also points to the statement in Sullivan v. Hudson, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), that a plaintiff's status as a prevailing party is "often completely dependent on the successful completion of the remand proceedings before [the agency]." Id. at 887, 109 S.Ct. at 2255. True enough, "often" it is. Indeed in Hudson itself the claimant's status as a prevailing party depended upon a future administrative adjudication in order to determine his entitlement to Social Security disability benefits. By contrast, in Grano and in this case, no further proceedings were necessary in order for the plaintiff to have obtained all the relief that it sought or that was available to it.
 
 
 23
 Finally, the EPA argues that the EDF's victory was insignificant because, despite the change in the wording of the regulation, the agency has never changed its interpretation of Sec. 261.11(a)(3). This argument, however, assumes the answer to the question whether notice and comment were required--no, if the amendment was technical and not substantive--the very issue that the parties settled. We decline the EPA's invitation implicitly to decide that question now in this distinctly collateral context and without the benefit of full briefing and argument.
 
 B. Amount of Fees
 
 24
 The EDF requests $32,542.75 for the services rendered by an in-house staff lawyer (Karen Florini) and three lawyers and a recent law school graduate at the Sierra Club Legal Defense Fund (Howard I. Fox, Kirsten H. Engel, Robert G. Dreher, and Edward Zukoski)--of which $7,972.50 is for work on the merits and $24,570.25 is for work done in order to recover the attorneys' fees. The EPA argues that the EDF's claim is for a grossly unreasonable number of attorney hours with respect both to the merits and to the fee petition. We agree. Therefore, says the EPA, the court should deny the fee request in its entirety or, alternatively, substantially reduce the award. We take the latter course.
 
 
 25
 As already mentioned, we determine an attorney's fee by multiplying the prevailing hourly rate (or "lodestar") by the number of attorney hours reasonably expended. See Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. In deciding the reasonableness of the hours reported, we properly disallow "time spent in duplicative, unorganized or otherwise unproductive effort." Jordan v. Department of Justice, 691 F.2d 514, 518 (D.C.Cir.1982). We may deny in its entirety a request for an "outrageously unreasonable" amount, lest claimants feel free to make "unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir.1980); accord Jordan, 691 F.2d at 518; Trichilo v. Secretary of Health and Human Services, 823 F.2d 702, 708 (2d Cir.1987). In a case of less egregious overbilling, we may impose a lesser sanction, such as awarding a fee below what a "reasonable" fee would have been in order to discourage fee petitioners from submitting an excessive request. Cf. Farris v. Cox, 508 F.Supp. 222, 227 (N.D.Cal.1981) (denying attorney's fee for work on fee petition in order to "curb the practice of padding fee requests" but awarding fee for work on merits).
 
 
 26
 In this case one of the attorneys for the EDF, Kirsten Engel, claims to have spent what we believe to be an outrageously excessive amount of time on certain tasks. The EDF discounted some of her time but still seeks reimbursement for an unreasonable number of her hours. As a result, the EDF's fee application is greatly inflated; nevertheless, we do not deny the petitioner's fee request in its entirety, but adopt a more discriminating approach by denying all recovery for Engel's services alone--$17,773.50. The other EDF attorneys all submitted reasonable time sheets; and the EDF itself discounted Engel's time substantially in formulating its fee request. In these circumstances we think that disallowing all fees would unduly penalize the EDF for the conduct of a single outside attorney who has since departed the SCLDF.
 
 
 27
 [303 U.S.App.D.C. 92] 1. Time Entries of Kirsten Engel
 
 
 28
 While we ordinarily probe a petition for attorneys' fees with particular care, see EDF v. EPA, 672 F.2d 42, 54 (D.C.Cir.1982), even a perfunctory examination of Engel's time entries would show that she billed on a Brobdingnabian scale. To take the clearest case first, Engel reported having spent 3.5 hours completing a Notice of Appearance. Even the EDF must regard that as wholly unreasonable for it seeks reimbursement for only .5 hours, or one-seventh of the time Engel claimed to have spent. At oral argument counsel for the EDF was understandably incapable of explaining how a lawyer could spend 3.5 hours on a Notice of Appearance.
 
 
 29
 Perhaps even more egregiously, Engel claimed to have spent 73.45 hours--nearly two work weeks--preparing two letters to the EPA about the EDF's request for attorneys' fees. Of that amount, 31.3 hours were said to be for a one-and-one-half page letter consisting of four paragraphs, one of which merely cites a string of cases; another 42.15 hours were said to lie behind a three-page letter that briefly distinguishes three cases cited by the EPA, cites two cases not cited in the previous letter, and disputes the EPA's contention that the vacatur of the 1990 amendment effected no substantive change. Neither letter contains any detailed analysis of the cases relied upon, and indeed most of the second letter simply discusses the cases cited by the EPA in earlier correspondence.
 
 
 30
 These relatively brief letters should have taken no more than two days to research and prepare. Yet, Engel attributed to them some 23 separate time entries totalling almost 75 hours. Indeed, research aside, she claimed to have spent 13 hours just drafting the three-page letter and then another 15 hours redrafting it in response to comments from Howard Fox, the attorney who supervised her work. The EDF seeks reimbursement for only 76.35 of the 101.35 hours that Engel claimed to have spent on its fee motion, but it does not say specifically which of Engel's claims it is discounting. Even if we were to assume, however, that the EDF deducted all 25 hours from the time Engel claimed to have spent on these two letters, the EDF would still be seeking fees for nearly 50 hours spent preparing them--or about three times what the work should have required.
 
 
 31
 We come next to Engel's work drafting the motion for the award of fees. The EDF states that "[t]he research performed by Ms. Engel during settlement negotiations enabled her to draft the ... motion expeditiously." Would that it were so. In fact, Engel claims to have spent 21.1 hours drafting the motion, which is essentially a boilerplate memorandum not at all tailored to the particular fee request. The motion contains no citations to or discussion of the legal authorities most relevant to the EDF's petition--ASH v. CAB, EDF v. EPA, Grano, Waterman, Garland, and Sullivan--and refers to only two of the 23 cases cited in the two letters Engel had prepared. The legal analysis in the motion spans all of two pages and features virtually no argument that the EDF would not have made in its every previous motion for attorneys' fees. The motion should have required of any reasonably efficient lawyer at most eight hours to complete--one day, not three as claimed.
 
 
 32
 These most egregious examples cast a fatal doubt upon the efficiency of Engel's work, much of which would be at least suspect anyway. For example, Engel claimed to have spent almost a full work day (7.8 hours) "reviewing" a five-page draft Motion for Dismissal and Remand and "conferring" with other EDF attorneys about it. She also claimed to have done 37.5 hours of research on the merits (for 34 of which EDF seeks compensation). This seems a lot because the merits involved only one issue: Whether the EPA had to give public notice and receive comments before amending its regulation. We do not understand why any attorney--much less one who, according to the EDF, has "extensive experience practicing under RCRA" and was asked to teach at a major law school--would need almost a full week in order to research that issue. Cf. Conservation Law Foundation v. Watt, 654 F.Supp. 706, 708 (D.Mass.1984) (reducing fee award because attorneys' "experience and background would necessarily mean that its efforts in this case started from a basic familiarity [303 U.S.App.D.C. 93] with environmental law and not from scratch"). Significantly, it is impossible to corroborate the extent of Engel's research on the merits issue, and thus to evaluate the reasonableness of the time she claims to have expended. Neither she nor any other EDF attorney wrote even a draft brief before the parties settled the case.
 
 
 33
 We are compelled to conclude that Engel submitted outrageously excessive time entries and that the EDF failed adequately to exercise its billing judgment by reducing the resulting fee request to a reasonable level. Therefore, we award the petitioner none of the $17,773.50 it asks for Engel's work.
 
 2. Time Spent by Other EDF Attorneys
 
 34
 With one exception, the court accepts as reasonable all the time entries made by the EDF's other attorneys for time spent on the merits and the fee petition. We deny only the EDF's request to be compensated for the five hours that Karen Florini spent "preparing memorandum to Litigation Review Committee to secure case approval." "Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) (emphasis in original). According to the Government, a law firm does not normally bill a client for the time it takes to decide whether to accept a case; the EDF notes the lack of authority supporting that observation but does nothing to carry its burden of showing that it is reasonable to bill for such internal deliberations. Accordingly, we deny the $700 in fees requested for the time Florini spent in securing case approval.
 
 III. CONCLUSION
 
 35
 It appears that Engel's flagrant overbilling was an aberration and that the EDF and its other outside attorneys have been conscientious in submitting their recordkeeping and fee request to this court. While we expect that the EDF will be more alert to the need to exercise billing judgment in the future, we think that complete disallowance of the EDF's fee request would unduly punish the organization and its attorneys because the SCLDF happened to have been associated at one time with an attorney who billed an unreasonable amount of time for the work she produced. Therefore, while we award the EDF none of the fee request for Engel, we award the rest of its requested fee subject to the one adjustment set out in Part II.B.2 above.
 
 
 36
 Today's decision should nonetheless clearly convey this court's attitude toward excessive fee requests. We regard overbilling the government as a serious transgression, damaging to the public fisc and violative of the trust reposed in each member of the bar. It is irrelevant that in this particular case the award of Engel's fees would enrich neither her nor any individual attorney. (Any award would be paid to the Sierra Club Legal Defense Fund.) There is simply no excuse for a private attorney general billing the Government for unnecessary legal services. Therefore, the petition for fees totalling $32,542.75 is granted to the extent of $14,069.25 and otherwise denied.
 
 
 37
 So ordered.
 
 SUPPLEMENTAL OPINION
 
 38
 Sept. 10, 1993.
 
 
 39
 Before WALD and D.H. GINSBURG, Circuit Judges.*
 
 
 40
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 
 D.H. GINSBURG, Circuit Judge:
 
 41
 The Environmental Defense Fund moves without opposition to modify the court's opinion of July 13, 1993. Specifically, the EDF requests that the court delete all references to Ms. Engel by name (as to which the EPA concurs) and revise various passages in order to avoid the implication that Ms. Engel intentionally inflated her time, as opposed to having expended "excessive time on her services in this matter through inefficiency, through inexperience with litigation, or through an excess of zeal."
 
 
 42
 The motion is granted in part. We decline to delete references to Ms. Engel by name. [303 U.S.App.D.C. 94] It would be improvident to advise the members of our bar that their billing excesses, whether owing to intentional inflation or merely to inefficiency and the like, will not be publicized even when the resulting fee is denied because it is "outrageously excessive." At the same time, however, the court does not find it necessary to conclude or to imply that Ms. Engel intentionally inflated her time, as opposed to having actually spent an unwarranted amount of time. Therefore, we have modified the opinion in several respects (although not always precisely as requested by the EDF) in order to avoid that implication.
 
 
 
 *
 Judge (now Justice) Ruth Bader Ginsburg was the third member of the panel