Linda E. LaPRADE, Liddle & Robinson,
L.L.P, Appellant,

v.

KIDDER PEABODY & CO.,
INCORPORATED,
Appellee.

No. 97–7107.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 15, 1998.

Decided June 23, 1998.

Jacob A. Stein argued the cause for appellant, with whom George A. Fisher was on the briefs.

Andrew J. Schaffran argued the cause for appellee, with whom Kathy B. Houlihan was on the brief.

Before: WILLIAMS, RANDOLPH and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

In June 1992, the district court stayed an action brought by Linda E. LaPrade against her former employer, Kidder Peabody & Co., because the dispute was covered by a valid arbitration agreement. Due to various delays, the first set of arbitration sessions did not take place until May and June of 1995 and the next set was not scheduled to begin until November 1996. The day before the arbitration was to resume, LaPrade's counsel, appellant Liddle & Robinson, L.L.P., obtained an ex parte order from a New York state court staying the arbitration. Liddle & Robinson did not inform that court of the district court's earlier order staying the original action and retaining jurisdiction. On the motion of Kidder Peabody, the district court lifted the stay imposed by the state court, imposed sanctions against Liddle & Robinson under 28 U.S.C. § 1927 for its "vexatious and dilatory tactics," and awarded Kidder Peabody $74,951.14 in attorneys' fees. On appeal, Liddle & Robinson contends that the district court did not have jurisdiction to enter this order and that it abused its discretion by imposing sanctions. We affirm.

## I.

On December 31, 1991, LaPrade filed suit against Kidder Peabody in the United States District Court for the District of Columbia.

She asserted various common law and statutory claims arising from her employment and termination by Kidder Peabody; jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332. Because LaPrade and Kidder Peabody had entered into an arbitration agreement, Kidder Peabody moved to stay the action pursuant to section 3 of the Federal Arbitration Act ("Arbitration Act"), which directs that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (1994). On June 24, 1992, the district court granted Kidder Peabody's motion to stay the action pending arbitration and retained jurisdiction, instructing "the parties [to] notify the Court once arbitration is completed as to what further proceedings in this Court are appropriate."

Arbitration did not proceed smoothly. After appealing the initial stay order unsuccessfully and filing a second action in the district court against Kidder Peabody, which was consolidated with the first and likewise stayed pending arbitration,[1] LaPrade finally commenced arbitration before the National Association of Securities Dealers ("NASD") on September 30, 1993. After extensive discovery and repeated scheduling conflicts, the NASD held twelve hearing sessions in New York City between May 1 and June 21, 1995, almost three years after the initial stay order by the district court. Additional scheduling conflicts and a dispute among the members of the arbitration panel resulted in further delays, and the next round of hearings was not scheduled to begin until November 20, 1996.

The day before the hearings were set to recommence, however, Liddle & Robinson, whom LaPrade had retained to represent her before the NASD, filed an action in New York state court seeking an ex parte order that "the arbitration hearings ... be stayed and the parties referred to their court remedies, or in the alternative, that the NASD be ordered to disqualify the present arbitration

panel, and for such other and further relief as may be just and proper." Notably, Liddle & Robinson did not notify the New York state court that the federal district court had earlier entered an order staying LaPrade's action pending arbitration but retaining jurisdiction. The New York state court issued the requested ex parte order staying the arbitration, and the series of nine arbitration sessions scheduled to begin the next day was canceled.

Informed of Liddle & Robinson's ex parte actions before the New York state court only after the stay was granted, Kidder Peabody returned to the district court on November 25, 1996, requesting an emergency order directing LaPrade to withdraw her petition in New York state court, holding Liddle & Robinson in contempt, and imposing sanctions pursuant to 28 U.S.C. § 1927. The district court denied the request for a temporary restraining order, but subsequently issued a preliminary injunction and granted Kidder Peabody's other requests for relief. The New York state court action, the district court found, "constitutes an interference with the arbitration currently pending between the parties ... [and] an interference with the jurisdiction of this Court." Thus, the district court enjoined LaPrade and her counsel from engaging in further proceedings before the New York state court, lifted the stay imposed by that court, and entered sanctions against Liddle & Robinson. On this last point, the district court ordered that:

> plaintiff's counsel, the law firm of Liddle & Robinson, ... shall compensate Kidder, Peabody & Co., for the vexatious and dilatory tactics of plaintiff's counsel in filing *ex parte* papers in the State Court proceeding, without any notice to the State Court of the actions pending before this Court, and without any notice to the State Court of this Court's arbitration orders, all of which multiplied the proceedings.

The district court directed Kidder Peabody to file a statement of "the attorneys' fees, costs, and other expenses reasonably incurred as a result of the improper activities

---

1. In its order of March 23, 1994, which consolidated the first and second actions, the district court again directed the parties to "notify the Court once arbitration is completed as to what further proceedings in this Court are appropriate."

of plaintiff's counsel." Thereafter, Kidder Peabody submitted a figure of $83,279.04, based on a total of 333.5 hours of work by six partners, seven associates, two legal assistants, and four other staffers of Kidder Peabody's counsel. Eighty-six percent of the hours worked by partners was attributable to one partner, however, and eighty-nine percent of the hours worked by associates was attributable to three particular associates. Liddle & Robinson objected to both the district court's decision to grant attorneys' fees and the amount sought by Kidder Peabody. In particular, Liddle & Robinson claimed that the award of fees was inappropriate because its pursuit of an ex parte state court order was a tactic previously approved by the Second Circuit in *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17 (2d Cir.1990); that the attorneys' fees statement showed that Kidder Peabody's counsel performed duplicative and excessive work (although Liddle & Robinson did not challenge the reasonableness of the rate charged per hour); that there was no proof that Kidder Peabody had actually "incurred" the claimed expenses; and that an evidentiary hearing was necessary to determine which fees and expenses were reasonably incurred.

The district court rejected Liddle & Robinson's attempts to reargue the merits of the sanctions award but agreed that Kidder Peabody's proposed figure for attorneys' fees required some adjustment. The court found that Kidder Peabody's counsel had expended an unreasonable number of hours on the project; thus, the district court reduced the award from the requested figure of $83,279.04 to a figure ten percent lower: $74,951.14.

## II.

■ Liddle & Robinson first contends that the district court lacked jurisdiction to enter the sanctions order. Although the district court clearly intended to retain jurisdiction over the stayed actions, Liddle & Robinson maintains that it could not do so under the Arbitration Act. The district court only stayed the actions and never actually ordered the parties to enter arbitration. Hence, Liddle & Robinson contends, it had no jurisdiction over the arbitration proceedings in New York City, and thus no jurisdiction to impose sanctions based on Liddle & Robinson's conduct related to those proceedings.

■ Liddle & Robinson's contention turns on the distinction between sections 3 and 4 of the Arbitration Act. Section 3 empowers a district court only to stay an action, leaving to the claimant the choice of arbitrating the claims or abandoning them.[2] *See* 9 U.S.C. § 3; *see also The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 45, 64 S.Ct. 863, 88 L.Ed. 1117 (1944). Section 4 allows the court to issue orders directing arbitration.[3] *See* 9 U.S.C. § 4 (1994). The district court stayed the actions brought by LaPrade against Kidder Peabody under section 3, and did not direct arbitration under section 4; hence, Liddle & Robinson contends that the

---

**2.** Section 3 of the Arbitration Act provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

**3.** Section 4 of the Arbitration Act provides, in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

district court had "no power to superintend and direct the pending arbitration in New York City."

However, the district court did not have to rely upon the Arbitration Act for jurisdiction. The district court's jurisdiction derived from the original diversity suit, which was only stayed (*not* dismissed) pending the results of arbitration. While Liddle & Robinson is correct that section 3 of the Arbitration Act was not itself a source of jurisdiction for the district court to consider Kidder Peabody's motion for sanctions, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), it also did not *divest* the district court of jurisdiction over the case: "The section obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate." *The Anaconda*, 322 U.S. at 44, 64 S.Ct. 863; *accord Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653–54 (9th Cir.1991); *Transportes Caribe, S.A. v. M/V Feder Trader*, 860 F.2d 637, 638–39 (5th Cir.1988); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham*, 736 F.Supp. 887, 889 (N.D.Ill. 1990).

█ Even if Liddle & Robinson means to contend that, although the district court still had jurisdiction over the original suit, its jurisdiction was suspended until the arbitration was complete, the contention similarly fails. The Arbitration Act contemplates that courts should not interfere with arbitrations by making interlocutory rulings, *see, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *In re Arbitration Between Michaels & Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir.1980), but this general proposition does not aid Liddle & Robinson. The rationale behind the principle disfavoring judicial interference with ar-

bitration supports what the district court did here. The principle is based on the "congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp.*, 388 U.S. at 404, 87 S.Ct. 1801; *accord Moses H. Cone*, 460 U.S. at 23, 103 S.Ct. 927. In the instant case, the district court stayed LaPrade's actions, instructing her, in effect, that she could not litigate her claims directly in court, but could only arbitrate them or abandon them. If a party in her position could subsequently go to another court in an attempt to avoid the effect of the order, that party would have an easy route to delay and obstruct the proceedings. The Arbitration Act contemplates no such illogical result and Liddle & Robinson can point to no persuasive authority suggesting that conclusion.

█ Rather than interfering with the arbitration proceeding, the district court was attempting to protect that proceeding and the effect of its own order. The district court had ordered LaPrade that she could not pursue her civil remedies without first submitting to arbitration but, in clear contradiction of that order, Liddle & Robinson appealed to the state court to stay the arbitration and remit the parties to judicial remedies, without even informing that court of the district court's instructions. Clearly, the district court had jurisdiction to address this situation: it retained jurisdiction over the original suit, and the Arbitration Act did not divest it of jurisdiction to ensure that the parties adhered to its previous order under the Arbitration Act. Liddle & Robinson's contention that the district court was without jurisdiction to impose sanctions is meritless.[4]

### III.

█ The question remains whether the district court abused its discretion in imposing sanctions for Liddle & Robinson's "vexa-

---

4. The Arbitration Act does not provide that the district court loses venue if the arbitration proceeds in another judicial district. *See, e.g., Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 191–93 (4th Cir.1998); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir.1985). We have no occasion to address whether other state or federal courts could have provided Kidder Peabody with similar relief. It suffices to note that once venue was established in regard to institution of the lawsuit, *see Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1264 (Fed.Cir.1985), the district court did not lose venue because the parties arbitrated elsewhere.

tious and dilatory tactics" under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1994). Liddle & Robinson contends that the district court abused its discretion in imposing sanctions, in setting the level of the attorneys' fees award, and in refusing to hold an evidentiary hearing on the attorneys' fees issue. This court reviews a district court's decision to award attorneys' fees under 28 U.S.C. § 1927, and the way it chooses to set the award, only for abuse of discretion. *See Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1980) (en banc). Although this court has not directly established the standard of review for a district court's decision whether to hold an evidentiary hearing on an attorneys' fees application, the appropriate standard again appears to be abuse of discretion. *See* D.D.C.R. 108(f); *McLaughlin v. Bradlee,* 803 F.2d 1197, 1205–06 (D.C.Cir.1986); *Copeland,* 641 F.2d at 905. We find none.

### A.

■ First, Liddle & Robinson contends that the district court's decision to impose sanctions under 28 U.S.C. § 1927 was an abuse of discretion because the decision to seek an ex parte order in New York state court was justified by precedent and thus neither "unreasonable" nor "vexatious" under the statute. Liddle & Robinson maintains that the Second Circuit specifically approved this tactic in a substantially similar case, *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17 (2d Cir.1990), and thus that Liddle & Robinson's actions could not have been so unreasonable as to merit sanctions.

A review of *McMahon* shows how different that case is from this one. Plaintiffs Eugene and Julia McMahon sued defendant Shearson/American Express ("Shearson") in district court based on allegations of fraud and

misrepresentation in its management of their profit sharing and pension plans. *See id.* at 19. Upon opening their accounts, the McMahons had signed customers' agreements that included an arbitration provision, and after they filed their complaint, Shearson sent them a letter indicating its intent to file a motion to compel arbitration and requesting that they select an arbitral forum, as was their right under the arbitration provision. *See id.* The McMahons responded that the issue of the arbitral forum was premature and that they would select a forum only after a court declared the arbitration provision enforceable, at which point Shearson, claiming that the McMahons had waived their right, chose the New York Stock Exchange ("NYSE") as the forum. *See id.* On Shearson's motion, the district court stayed certain portions of the action under section 3 of the Arbitration Act. *See id.* at 19–20. When the appeals from that order were completed, the issue of arbitral forum resurfaced: the McMahons claimed that they retained the option to choose a forum, while Shearson maintained that its previous selection of the NYSE was binding. *See id.* at 20. Declining to resolve the issue, the district court directed the parties to reach agreement on their own, but the two sides subsequently began two separate arbitration proceedings—Shearson at the NYSE and the McMahons at the American Arbitration Association. *See id.* At that point, seeking to vindicate his clients' right to choose the arbitral forum, the McMahons' counsel filed an ex parte motion in New York state court for an order to show cause why the NYSE arbitration should not be stayed. *See id.* The defendant sought relief from the district court, and the McMahons' counsel agreed to postpone the proceedings before the state court. *See id.* Ruling that the defendant's initial election of the NYSE forum was valid, the district court imposed sanctions against plaintiffs' counsel under both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. *See id.* at 20–21.

Because of its conclusion that the actions of the McMahons' counsel had not been taken in bad faith, the Second Circuit reversed the imposition of sanctions under 28 U.S.C.

§ 1927. *See id.* at 23–24. Noting that the district court had expressly declined to decide the issue of the arbitral forum, the court sketched the counsel's unpalatable options:

> Examining [counsel's] alternatives for preserving his clients' right to choose a forum, we conclude that his choices were limited. One was a return to federal court—where the judge had already refused to rule. Another was to seek relief from state court, pursuant to a New York statute governing arbitration.

*Id.* at 23. The court concluded that counsel's "decision to involve the state court in the dispute was perhaps unorthodox, but under the circumstances ... [could not] be characterized either as subterfuge or an attempt to evade the jurisdiction of the federal court," *id.*, but rather seemed "a good faith attempt to preserve what counsel believed to be his clients' right to choose an arbitral forum," *id.* at 24.

*McMahon* is distinguishable from the instant case in many important respects. Perhaps most notably, the McMahons' counsel went to the state court for resolution of an issue the district court had declined to settle; in the instant case, by contrast, Liddle & Robinson went to state court for relief that was plainly inconsistent with the previous district court order. The McMahons' counsel filed for an ex parte order in order to *protect* the arbitration procedure by establishing the correct arbitral forum, not to circumvent the arbitration altogether; as the Second Circuit emphasized, the attempt to secure an ex parte order was not "an attempt to evade the jurisdiction of the federal court," *id.* at 23. Here the opposite appears true. *See supra* Part II. Furthermore, the timing of Liddle & Robinson's excursion to state court was more egregious: the McMahon's counsel went to state court at the start of the arbitration, *see McMahon v. Shearson/American Express Inc.,* 709 F.Supp. 369, 372 (S.D.N.Y. 1989), *rev'd,* 896 F.2d 17 (2d Cir.1990), whereas Liddle & Robinson sought state court relief after extensive discovery had been completed, on the day before hearings were to recommence after a seventeen-month delay. Finally, unlike Liddle & Robinson, the McMahons' counsel at least informed the state court of the district court's role in the proceedings, although the district court found the representations to the state court deceptive. *See id.* at 375 n. 22. *McMahon* does not justify Liddle & Robinson's actions.

Four and one-half years after the initial suit was stayed and the day before hearings were to restart after seventeen months of delay, Liddle & Robinson filed an ex parte action in New York state court to stay the hearings, without informing that court of the district court's orders or the district court's ongoing jurisdiction. Under the circumstances, the district court was well within its discretion to impose sanctions under 28 U.S.C. § 1927.

**B.**

■ Second, Liddle & Robinson contends that, even if the district court could have imposed sanctions, it did not support its order with sufficient findings of fact. This court has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be "recklessness" or the more stringent "bad faith." *See United States v. Wallace,* 964 F.2d 1214, 1218–19 (D.C.Cir.1992). Liddle & Robinson contends that, no matter the proper standard, the district court did not make findings of fact sufficient to support its decision to sanction. To the contrary, the record makes clear that, no matter which standard applies, the district court found that Liddle & Robinson's actions qualified.

Although the district court concluded that Liddle & Robinson's actions were "vexatious and dilatory" and "improper," and clearly believed that Liddle & Robinson was acting in bad faith, Liddle & Robinson objects to the district court's failure actually to make a finding of recklessness or bad faith. In the key passage in the order imposing sanctions, the court ordered,

> pursuant to 28 U.S.C. § 1927, that plaintiff's counsel, the law firm of Liddle & Robinson, shall compensate Kidder, Peabody & Co., for the vexatious and dilatory tactics of plaintiff's counsel in filing *ex parte* papers in the State Court proceeding, without any notice to the State Court of the actions pending before this Court,

and without any notice to the State Court of this court's arbitration orders, all of which multiplied the proceedings.

Later, in the order setting the award, the court specifically found that Liddle & Robinson's actions "unreasonably and vexatiously" multiplied the proceedings. These passages certainly imply that the district court thought the firm was acting in bad faith, but Liddle & Robinson is correct that the district court never stated this explicitly in its orders.

■ The fact that the district court never explicitly said the words "bad faith" or "recklessness" does not demonstrate an abuse of discretion: "these words are not talismans required for affirmance." *Eisenman v. Peoro (In re Peoro)*, 793 F.2d 1048, 1051 (9th Cir.1986). According to the language of 28 U.S.C. § 1927, the district court must find that "the offending attorney's multiplication of the proceedings was both 'unreasonable' and 'vexatious.'" *Travelers Ins. v. St. Jude Hosp. of Kenner, La.*, 38 F.3d 1414, 1416–17 (5th Cir.1994) (quoting *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir.1994)). For such a finding to be valid, "evidence of recklessness, bad faith, or improper motive must be present." *Id.* at 1417. Here the district court made the requisite findings that Liddle & Robinson's actions were unreasonable and vexatious, and there was sufficient evidence of bad faith and recklessness to support these findings. Moreover, given the ample evidence that the district court believed Liddle & Robinson acted in bad faith and recklessly,[5] it would be an empty formalism to find an abuse of discretion simply because the district court failed to invoke the magic words "bad faith" or "recklessness," and we decline to do so.

### C.

■ Third, Liddle & Robinson contends that, even if sanctions were appropriate, the district court abused its discretion in awarding $74,951.14. In particular, Liddle & Robinson contends that the statement filed by Kidder Peabody was so "outrageously unrea-

sonable" that, under *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254 (D.C.Cir. 1993), the district court ought to have denied Kidder Peabody any award at all. *Id.* at 1258. Instead, considering the proposed fee award of $83,279.04 based on 333.5 hours of work by Kidder Peabody's counsel, the district court awarded $74,951.14, a figure ten percent below Kidder Peabody's lodestar figure.

Admittedly, 333.5 hours of work seems a high figure for actions taken in response to Liddle & Robinson's ex parte action in state court, and it seems a bit excessive that six partners, seven associates, two legal assistants, and four other staffers worked on the matter. Although Liddle & Robinson did not challenge the rate charged per hour, the district court agreed that the basis for the resulting fees was unreasonable "both in terms of the number of attorneys and the number of hours." Faced with these unreasonable figures, the district court heeded this court's decision in *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc), in which the court held that a district court judge— "recognizing, as he did, that some duplication or waste of effort had occurred—did not err in simply reducing the proposed 'lodestar' fee by a reasonable amount without performing an item-by-item accounting." *Id.* at 903. Although a district court might in some circumstances consider a fee request, or a particular item within a fee request, so "outrageously unreasonable" that outright denial of the request or an item within the request would be appropriate, *Environmental Defense Fund*, 1 F.3d at 1258 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)) (internal quotation marks omitted), the district court's decision to award a lesser figure than the lodestar request, rather than denying the request outright, was within the district court's discretion.[6] *See id.* at 1260; *Copeland*, 641 F.2d at 900–08.

### D.

■ Nor is Liddle & Robinson's position that the district court abused its discretion

---

5. In numerous pointed statements to a representative of Liddle & Robinson in two hearings, the district court made clear its view that the facts supported an award of attorneys' fees whether the proper standard was recklessness or bad faith.

6. Liddle & Robinson's assertion that the record contains no proof that Kidder Peabody actually

by not holding an evidentiary hearing on the attorneys' fees issue after the court decided to impose sanctions persuasive. This failure, Liddle & Robinson insists, violated due process because 28 U.S.C. § 1927 is a punitive statute and, hence, Liddle & Robinson should have been allowed to inquire at an evidentiary hearing into what expenses were actually incurred and how reasonable such expenses were.

Although a hearing may certainly be "useful" in some instances, *see Copeland*, 641 F.2d at 905, and "it is perhaps conceivable that due process could require a hearing on sanctions ... in certain circumstances," a hearing is not required in all circumstances. *McLaughlin*, 803 F.2d at 1205. Regarding sanctions under Federal Rule of Civil Procedure 11, the court stated in *McLaughlin:*

> The trial court, as a primary participant in the proceedings, had already observed those elements of the litigation most relevant to the criteria for imposing sanctions under the rule, most notably McLaughlin's conduct during the trial.... The opportunity the District Court provided McLaughlin to respond to the defendants' applications for fees and costs gave him ample opportunity to set forth whatever objections he had to the level of sanctions imposed.

*Id.* at 1205–06 (citation omitted). Here, as in *McLaughlin*, the party against whom sanctions have been imposed has had ample opportunity to set forth arguments in opposition to sanctions. Liddle & Robinson has no valid objection based in due process, and the district court did not abuse its discretion in deciding that a hearing was unnecessary.

Accordingly, we hold that the district court had jurisdiction to impose sanctions upon Liddle & Robinson and that in so doing it did not abuse its discretion, and we affirm.

---

"incurred" these costs (that is, actually paid its counsel for services rendered) is belied by a certificate filed by Kidder Peabody's counsel stating that Kidder Peabody paid its counsel $83,-

279.04. *See* FED. R.APP. P. 10(a); D.C. CIR. R. 30(b). Liddle & Robinson has introduced no contradictory evidence.