# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 13, 2010

No. 09-10355

Lyle W. Cayce
Clerk

POSITIVE SOFTWARE SOLUTIONS, INC.,

> Plaintiff-Appellee
> Cross-Appellant,

versus

NEW CENTURY MORTGAGE CORPORATION; ET AL.,

> Defendants,

versus

OPHELIA F. CAMIÑA,

> Respondent-Appellant
> Cross-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

No. 09-10355

Before SMITH, WIENER, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ophelia Camiña appeals the district court's imposition of sanctions for her conduct during arbitration. Because that court lacked inherent authority to impose those sanctions, we reverse and remand.

I.

In 2003, Positive Software Solutions, Inc. ("Positive Software"), sued New Century Mortgage Corporation ("New Century") for allegedly infringing telemarketing software licensed to New Century. Ophelia Camiña, a partner at Susman Godfrey LLP, appeared as attorney for New Century. Over Positive Software's objection, the district court ordered the case to arbitration in accordance with the parties' contract.

During arbitration, Camiña advised New Century on various discovery matters. In September 2004, the district court vacated the award because the arbitrator had failed to disclose his previous professional relationship with Camiña. This court reversed the vacatur and remanded. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278 (5th Cir. 2007) (en banc).

After remand, New Century declared bankruptcy. In the course of the bankruptcy proceedings, Positive Software settled its claims against New Century, and the case was administratively closed. Under the settlement, New Century waived and assigned to Positive Software its attorney-client and work-product rights. The district court granted Positive Software's demand that Susman Godfrey LLP turn over its files for use by Positive Software in pursuing sanctions.

In March 2008, Positive Software moved for sanctions against Camiña, Barry Barnett, and Susman Godfrey LLP under Federal Rule of Civil Procedure

No. 09-10355

37, 28 U.S.C. § 1927, and the court's inherent authority. In February 2009, using its purported inherent authority, the court sanctioned Camiña $10,000, representing a portion of Positive Software's attorneys' fees. Camiña appeals the sanction.

## II.

"We review *de novo* a district court's invocation of its inherent power and the sanctions granted under its inherent power for an abuse of discretion . . . ." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008) (citation omitted). We review the factual findings underlying those sanctions, however, only for clear error. *See Crowe v. Smith*, 151 F.3d 217, 239 (5th Cir. 1998).

## III.

Camiña claims that the district court lacked inherent authority to impose sanctions for her conduct during arbitration. In the alternative, she argues that the court employed the wrong standard of proof in finding that she acted in bad faith, and that the sanctions were not supported by the evidence. Because the court lacked inherent authority to sanction Camiña for her actions during arbitration, we need not address her alternative claims.

### A.

A district court has the inherent authority to impose sanctions "in order to control the litigation before it." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir. 1990), *aff'd sub nom*. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The court may also use that power to sanction conduct, *see Chambers*, 501 U.S. at 44, if it is "in direct defiance of the sanctioning court," *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993), or constitutes "disobedience to the orders of the Judiciary," *Chambers*, 501 U.S. 32,

3

44 (1991). Inherent power, however, "may be exercised only if essential to preserve the authority of the court . . . ." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

In *Maxxam*, we confirmed the limited reach of the court's inherent authority. There the FDIC sued Charles Hurwitz, alleging that he was responsible for the failure of a savings and loan association. The FDIC also encouraged the Office of Thrift Supervision ("OTS") to pursue similar claims in an administrative proceeding. The FDIC moved that the district court stay its case pending completion of the OTS proceeding. When the district court denied that motion, the FDIC continued to support the administrative action. Invoking its inherent powers, the court sanctioned the FDIC for Hurwitz's expenses in defending the OTS action. We reversed part of those sanctions on the ground that the inherent power does not extend to collateral proceedings that "do not threaten the court's own judicial authority or proceedings." *Maxxam*, 523 F.3d at 593. Inherent authority "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Id.* at 591 (citation omitted).

Here the district court distinguished *Maxxam*, positing that arbitration is not a collateral proceeding but instead an "annex" to litigation. It reasoned that because the court ordered the parties to arbitrate, it retained the authority to impose sanctions for conduct committed in arbitration. That approach is puzzling. To begin with, arbitration is not an annex to litigation, but an *alternative* method for dispute resolution.[1] Treating arbitration as if it were an appendage to adjudication is a mistake that would undermine the very purpose of arbitration––"the provision of a relatively quick, efficient and informal means of *private*

---

[1] This opinion deals only with traditional arbitration, which is contractual in nature, and not with so-called "judicial" or "court-annexed" arbitration or mediation, which is often compulsory.

dispute settlement . . . ." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990) (emphasis added). Parties agree to arbitration to *avoid* litigation; they voluntarily surrender judicial remedies in favor of an extrajudicial process.

Furthermore, the notion that the court's inherent authority turns on whether the arbitration was "court-ordered" is untenable. Positive Software claims that the district court retained significant supervisory authority by virtue of ordering the parties to arbitrate. When asked, in oral argument, whether the court would have had inherent authority to sanction Camiña if the parties had chosen to enter arbitration at the outset, Positive Software's counsel candidly stated, "of course not—that's *Maxxam*." Positive Software's distinction, then, would allow trial courts to oversee arbitrations in which one party had to be compelled to arbitrate but not those in which both parties complied with their arbitration agreement. Such a significant and perverse asymmetry cannot be justified, and Positive Software's efforts to distinguish this case from *Maxxam* are unavailing.

In an attempt to rescue the sanctions order, Positive Software additionally claims that the sanctions are based on Camiña's direct defiance of the preliminary injunction and protective order. That assertion, however, is belied by the court's own explicit explanation that the sanctioned conduct "took place in connection with the arbitration, not in connection with discovery under the Court's supervision." In other words, the court imposed sanctions not on account of any direct violation of a court order, but only because it found that Camiña had exhibited four particular instances of bad faith during arbitration.

Positive Software's argument, therefore, fails according to the court's own findings. Because Camiña's conduct was neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction.

B.

Not only are the sanctions at odds with our caselaw on inherent authority, but they also are in serious tension with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  Under the FAA, the district court has the authority to determine (1) whether arbitration should be compelled, *see* §§ 2-4, and (2) whether an arbitration award should be confirmed, vacated, or modified, *see* §§ 9-11.  Beyond those narrowly defined procedural powers, the court has no authority to interfere with an arbitration proceeding.  *See Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 520-21 (5th Cir. 1994) (per curiam).  Because both parties agree that their contract gave the arbitrator authority to sanction Camiña for bad-faith conduct, the FAA counsels against the district court's assigning itself that task.

Positive Software cites *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899 (D.C. Cir. 1998), to resolve the apparent tension between the sanction order and the FAA.  In *LaPrade*, the district court stayed an action brought by Linda La-Prade against her former employer because the dispute was covered by a valid arbitration agreement.  While the arbitration was pending, LaPrade's attorney went into state court and obtained an *ex parte* order staying the arbitration without informing that court of the district court's previous order.  On the employer's motion, the district court lifted the state court's stay and imposed sanctions against LaPrade's attorneys under 28 U.S.C. § 1927 for their "vexatious and dilatory tactics."  *LaPrade*, 146 F.3d at 900.  On appeal, the District of Columbia Circuit upheld the sanctions, concluding that the FAA did not divest the district court of jurisdiction to enter the sanctions order.  *Id.* at 903.

*LaPrade*, however, does not support the district court's exercise of inherent power against Camiña.  First, *LaPrade* held only that the FAA does not affect the district court's *jurisdiction* over a case stayed pending arbitration.  *Id.*  But jurisdiction alone does not create the inherent power to sanction arbitration con-

duct. That power must be grounded in some threat to the court's authority or its ability to function and must not be contrary to statute. Unlike the court in *LaPrade*, which involved sanctions under a specific statutory provision, the district court here relied only on its inherent authority, which, as noted, was not up to the task.

Furthermore, it is misleading to suggest that LaPrade's attorneys were sanctioned for conduct in arbitration. Instead, the court imposed sanctions for the *direct violation* of its order. *Id.* In staying the federal suit, the court mandated that LaPrade seek redress of her employment-related grievances only through arbitration. By obtaining a stay of arbitration in state court, her attorneys disregarded that order, thereby posing a threat to the federal district court's authority. That conduct might have been analogous to what happened here if Camiña's sanctions had rested on her violation of the preliminary injunction or the protective order. But as already discussed, the district court found no such violation.

## C.

Finally, and perhaps most importantly, the sanctions order threatens unduly to inflate the judiciary's role in arbitration. The FAA provides for minimal judicial involvement in resolving an arbitrable dispute; the court is limited to only a few narrowly defined, largely procedural tasks. But by using its power to sanction, a court could seize control over substantive aspects of arbitration. The court would, in effect, become a roving commission to supervise a private method of dispute resolution and exert authority that is reserved, by statute, caselaw, and longstanding practice, to the arbitrator. That supervision is inconsistent with the scope of inherent authority and with federal arbitration policy, which aims to prevent courts from delaying the resolution of disputes through alternative means.

No. 09-10355

In response, Positive Software claims that expansion of district court authority is necessary here, because Positive Software did not discover some of Camiña's alleged misdeeds until after the case had been settled and administratively closed. Positive Software argues that without the district court's assertion of inherent authority, there would have been no means to redress Camiña's supposed wrongdoing. That argument, however, ignores at least two other procedures that were available to Positive Software.

First, it could have asked the American Arbitration Association to re-open the proceedings so it could request sanctions from the arbitrator. *See* American Arbitration Association, Commercial Arbitration Rule 36, 38 (2009). Second, it could have relied on the grievance process. In fact, it did: Its counsel filed a grievance against Camiña, which was dismissed as lacking just cause. Contrary to Positive Software's contentions, then, there was no particular need for the district court to expand its inherent authority to prevent misdeeds from falling through the cracks.

IV.

In sum, the district court lacked inherent authority to sanction Camiña for her conduct during arbitration. That conduct was neither before the district court nor in direct defiance of its orders. If inherent authority were expanded to cover Camiña's conduct, there would be nothing to prevent courts from inserting themselves into the thicket of arbitrable issues––precisely where they do not belong. Such an expansion would also threaten the integrity of federal arbitration law in the name of filling a gap that does not exist. We therefore REVERSE the sanctions[2] and REMAND for any further proceedings that may be needed.[3]

---

[2] We do not condone Camiña's complained-of actions as they are alleged to have occurred. The clerk is directed to send a copy of this opinion to the Office of the General Counsel

(continued...)

8

No. 09-10355

[2] (...continued) of the State Bar of Texas. We are mindful that the State Bar declined to act on this matter in response to Positive Software's request, and we express no view on whether the State Bar should consider this matter further or, if it does, on what action it should take. We opine only that the federal courts are without power to issue sanctions under these particular facts.

[3] We apply the correct law to the facts at hand and do not speculate on whether a district court might ever have the power to sanction for conduct in arbitration. We might have reached a different result but for the district court's specific factual finding that the discovery issues "took place in connection with the arbitration, not in connection with discovery under the Court's supervision pursuant to the Federal Rules of Civil Procedure." Here, New Century affirmatively sought the entry of a protective order governing discovery both before the district court and in the arbitration proceedings; New Century also petitioned the court for sanctions against Positive Software on multiple occasions. Accordingly, had the alleged conduct arisen in connection with discovery before the district court or the protective order or preliminary injunction, it might have "threaten[ed] the court's own judicial authority or proceedings." *Maxxam*, 523 F.3d at 593, so the court might have been within its inherent authority to sanction Camiña, *see NASCO,* 894 F.2d at 703. We express no ultimate view on this hypothetical, which is not before us.